# EXHIBIT A

**COURT OF COMMON PLEAS**
**CIVIL DIVISION**
**ERIE COUNTY**

COMMON PLEAS COURT
ERIE, PA

2020 AUG 13 PM 1: 19

CLERK OF RECORDS
PROTHONOTARY

**RICHARD SUMINSKI**
50 Darien Road, Newark, DE 19711

*Plaintiff*

v.

**THE DIOCESE OF ERIE**
429 East Grandview Blvd.
Erie, PA 16504

Case No. *11659-2020*

**JURY TRIAL DEMANDED**

*Defendant.*

## COMPLAINT AND JURY TRIAL DEMAND
## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action with twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral & Information Service P.O. Box 1792 Erie, PA 16507 814-459-4411

1

**NOW COMES** the Plaintiff, Richard Suminski, by and through his attorneys, Christina Graziano, Esq. and Brian Ketterer, Esq. of Ketterer, Browne & Anderson LLC, brings this Complaint against the Defendant, the Diocese of Erie, and sets forth as follows:

### *Parties*

1. Plaintiff, Richard Suminski, is an adult individual who resides at 50 Darien Road, Newark, DE 19711.

2. The Defendant, the Diocese of Erie (hereinafter referred to as the "Diocese" or "Diocese Defendant"), is an entity operating and existing at 429 East Grandview Boulevard, Erie, PA 16504.

### *Factual Allegations*

3. At all times relevant hereto, Defendant, the Diocese of Erie, has been an ecclesiastical entity of the Roman Catholic Church whose professional mission includes providing religious education and training to members of the Catholic faith, administering the sacraments of the Church, and providing counseling, education, day care, instruction, guidance and supervision, to persons within the Diocese, including children and adolescents.

4. Erie Cathedral Preparatory High School (hereafter referred to as "Prep") is a Catholic preparatory school for boys, located at 225 W. 9th Street, Erie, PA 16501.

5. At all times relevant hereto, the Diocese trained, supervised, assigned, promoted, investigated, and/or removed Prep staff. At all times relevant hereto, Prep staff worked with, provided faith-based training, educated, supervised, and ministered to children and adolescents within the Diocese.

2

6.      At all times relevant hereto, Father Michael G. Barletta (hereinafter referred to as "Father Barletta" or "Barletta") was a member of the Prep staff hired, trained, supervised, promoted, and retained by the Diocese.

7.      At all times relevant hereto, the Diocese held its leaders, servants, agents, and employees out as people of high morals, as possessing immense power, teaching families and children to obey these leaders, agents, servants and employees, teaching families and children to respect and revere these leaders and agents, servants and employees, soliciting families and holing out the people that worked in its programs as safe.

8.      At all times relevant hereto, Plaintiff and his family reasonably relied upon these representations of the Diocese, allowing the Diocese to look after their minor child.

9.      At all times relevant hereto, the Diocese was in a specialized or superior position to receive and did receive specific information regarding misconduct by its agents, servants, and employees, that was of critical importance to the well-being, protection, care, and treatment of students, including Plaintiff.

10.     At all times relevant hereto in the United States and particularly in the Diocese, the hierarchy of the Roman Catholic Church and the Diocese have had actual knowledge that priests and other agents, servants and employees of the Church and the Diocese sexually abused children and have hid the information from its parishioners, students, and the public including the Plaintiff and his family.

11.     This knowledge was not made available to the Plaintiff or his family and was concealed.

12.  At all times relevant hereto, the Diocese exercised its special and superior position to assume control of said knowledge and any response thereto.

13.  At all times relevant hereto, the Diocese created the misrepresentation in the mind of the Plaintiff, his family and those otherwise responsible for his care and safety that he and other children were safe with the Diocese's agents, servants, and employees and with Fr. Barletta in particular.

14.  At all times relevant hereto, it was foreseeable and/or known to the Diocese that its agents, servants and employees would sexually abuse children in its care and, in fact, that such sexual abuse did take place.

15.  At all times relevant hereto, because of the Diocese's special relationship and assumed duty, described in greater detail herein, the Diocese had a duty to disclose all that it knew, or reasonably should have known about sexual abuse by its servants, agents, and employees, including Fr. Barletta, may sexually abuse minors in the Diocese.

16.  At all times relevant hereto, the Diocese also had a duty to Plaintiff and his family to warn them about the problem of sexual abuse by its servants, agents, and employees.

### *The Grand Jury Report*

17.  In August, 2018, a 1400 page Report was released that summarized an eighteen month grand jury investigation into the widespread sexual abuse of children within six Dioceses (Allentown, Erie, Greensburg, Harrisburg, Pittsburgh and Scranton) of the Catholic Church in Pennsylvania and the systematic cover up by senior church officials in Pennsylvania and at The Vatican.

18.   The grand jury investigation was one of the broadest inquiries into church sex abuse in U.S. history and identified more than 300 priests across Pennsylvania that abused children for over seven decades. The Report identifies 1,000 children who were victims of the sexual abuse.

19.   The Grand Jury Report states in pertinent part, "evidence showed that Diocesan administrators, including the bishops, had knowledge of this conduct yet regularly placed the priests in ministry after the Diocese was on notice that a complaint of child sexual abuse had been made. This conduct was enabling to the offenders and endangered the welfare of Children". (Grand Jury Report, page 209).

20.   The Grand Jury Report also states, "[they] received evidence that several Diocesan Administrators, including the bishops, often dissuaded victims from reporting to police or conducted their own deficient, biased investigation without reporting crimes against child to the proper authorities". (Grand Jury Report, page 210).

21.   The Grand Jury Report contained many conclusions, most pertinently, "priests were raping little boys and girls and the men of God who were responsible for them not only did nothing; they hid it all". (Grand Jury Report, page 7).

22.   Barletta was specifically named in the grand jury Report as a sexual abuser and the Report details specific facts regarding the abuse that occurred on many occasions with different children victims. (Grand Jury Report, pages 393-96).

23.   According to the Report, the Diocese was made aware of Barletta's sexual abuse allegations and criminal actions on numerous occasions. (Grand Jury Report, pages 393-96).

24.    From as early as the late 1960s, members of the clergy went to the Diocese to report Barletta's inappropriate behavior towards children, including forced masturbation, exposure, and rape. Monsignor Hastings, an authoritative figure in the Diocese of Erie, dismissed the reports, instructing the reporting clergy to "[g]o home, and be a good priest". (Grand Jury Report, page 393).

25.    From 1975 through 1994 (the year in which Barletta was finally dismissed from Erie Cathedral Preparatory), Barletta admittedly abused 25 children. (Grand Jury Report, page 396).

26.    After 1994, Barletta was allowed to continue ministering to the faithful in the Diocese of Erie. He was appointed to be an Assessor in the Diocesan Tribunal in July 1995 and was appointed to work in the Office of Catholic Charities in 1997. These assignments were granted after Bishop Trautman discovered Barletta's misdeeds and removed him from public ministry. In one document, written in 1997, Barletta was congratulated on his "outstanding sermons at Carmel" by Bishop Trautman. (Grand Jury Report, page 396).

27.    In 1994, the Diocese listed Barletta as being on sabbatical. In fact, Barletta had actually been sent to the Southdown Treatment Center, whose mission is to provide preventative and restorative care to clergy and vowed religious using the integration of psychological, physical and interpersonal practice with the wisdom of the Catholic Spiritual Tradition.

28.    This information was never released to the parishioners of the Diocese of Erie. Barletta was housed, fed and given therapy at Southdown at a significant cost to

the parishioners of Erie, which is detailed in the Diocesan records. (Grand Jury Report, page 396).

29. Diocesan files indicate that in 1993, Monsignor Andrew Karg, an authoritative figure within the Dioceses of Erie, received a complaint from five fellow priests expressing serious concerns about Barletta. On April 29, 1993, Karg wrote to Trautman about the priests' fears regarding Barletta, including reports that Barletta maintained a book of "crotch shots" in his residence, taken from inside the boys' locker room. Karg further reported a fear that in the event of Catholic Preparatory School ever facing a lawsuit, "will the 18 years of Father Barletta also come to light?" (Grand Jury Report, page 396).

30. Despite the knowledge and notice of Barletta's criminal actions, the Diocese Defendant repeatedly failed to take any action to investigate, discipline or report Barletta as a sexual predator. In fact, the Defendants took action, as noted above, to conceal Barletta's misconduct.

31. Despite the knowledge and notice of Barletta's criminal actions, the Diocese Defendant continued to allow Barletta to use the facilities of the church and parish rectory to further his sexual and immoral conduct with the Plaintiff, as stated below.

### *Plaintiff's Abuse*

32. At all times relevant hereto, Fr. Barletta worked with cared for and ministered to children and adolescents within the Diocese.

33. Fr. Barletta was also an agent of the Prep school, and was employed there from 1975-1994.

34.   At all times relevant hereto, Fr. Barletta had and was permitted to have unmitigated ability to access children and adolescents with impunity through his position as a priest and employee of Prep.

35.   Plaintiff attended Prep for his high school career.

36.   As a young child, Plaintiff asked his parents to allow him to become baptized into the Catholic faith; for Plaintiff, his belief in the Catholic Church was an integral part of his identity.

37.   At all relevant times, Plaintiff was a minor under the age of 18.

38.   Plaintiff recalls that the Prep students referred to Barletta as "Barts" and that Barletta had a "big brother", friendly type of demeanor with students such as Plaintiff.

39.   In or around 1981, Plaintiff attended a senior trip to Niagara Falls that was organized and chaperoned by Barletta.

40.   Upon information and belief, Plaintiff, Barletta, and the other student on the trip stayed at the Thunderbird Motel on the Canadian side of the falls for the duration of their stay in Niagara Falls.

41.   During one night of the trip, Plaintiff recalls Barletta having Plaintiff and other student come to his room. Barletta then encouraged Plaintiff and other student to "let me hypnotize you."

42.   Plaintiff recalls that he was not under hypnosis but is unsure as to whether the other student was in fact hypnotized.

43.   Plaintiff recalls that Barletta removed his pants and exposed his erect penis to Plaintiff and the other student.

44.  Plaintiff recalls that Barletta wanted Plaintiff and other student to masturbate Barletta; Plaintiff touched Barletta but did not continue to engage with him, while the hypnotized student brought Barletta to orgasm at Barletta's instruction.

45.  Plaintiff recalls that he was afraid to report Barletta's actions and feared judgment and repercussions from his friends and family.

46.  Approximately four months later, Barletta instructed Plaintiff to attend confession, which was held in Barletta's apartment's bedroom above St. Luke's school.

47.  Once Plaintiff appeared for his confession, Barletta removed his clothing and demanded that Plaintiff strip down to his underwear.

48.  Plaintiff recalls that Barletta wanted Plaintiff to touch his penis and made repeated overtures for Plaintiff to engage in sexual acts with Barletta.

49.  Plaintiff recalls becoming angry and leaving.

50.  Plaintiff tried to avoid Barletta for the remainder of his time at Prep, but could not avoid Barletta completely due to his tenure at the school.

51.  Plaintiff lost his faith in the Catholic Church as a result of his abuse at the hands of Barletta. He is no longer a practicing Catholic.

52.  Barletta, at the time of the wrongful acts complained of, was upon premises in possession of the Diocese.

53.  Barletta was prosecuted, convicted, and is now serving a criminal sentence for sexual assault of minors.

54.  Plaintiff became aware of the prosecution and sentencing and now suffers repressed memory and the extent of his emotional, long term injuries inflicted on him as a minor child by the Diocese.

55.   Plaintiff recently discovered that the Diocese is culpable for the abuse he suffered and incurred further trauma as a result.

### *Defendants' Knowledge and Notice of Barletta's Sexual Abuse of Children*

56.   It is believed and therefore averred that the Diocese was acutely aware of Barletta's sexual interest in children.

57.   As stated and according to the grand jury Report, the Diocese was made aware of Barletta's sexual abuse allegations and criminal behavior.

58.   Prior to and during his tenure at Prep, it is believed and therefore averred that the Diocese was on notice that Barletta had a sexual interest in children and would utilize his position as a priest and youth mentor to groom and thereafter seek sexual gratification from his physical contact with children within the youth group.

59.   Despite the knowledge and notice of Barletta's criminal actions, the Diocese repeatedly failed to take any action to investigate, discipline or report Barletta as a sexual predator.

60.   According to the Grand Jury Report, Barletta was transferred to the office of the Assessor in the Diocesan Tribunal in 1995 and was appointed to work in the Office of Catholic Charities in 1997 (Grand Jury Report, page 396).

61.   The Diocese Defendant's records makes no mention of the cause for this transfer or the other transfers listed in the Grand Jury Report. (Grand Jury Report, page 396).

62.   Despite repeated complaints of sexual abuse, the Diocese failed to take action or report Barletta's criminal activities and, instead, continued to transfer him to other locations and make more children susceptible to sexual abuse.

63. Upon reading the Grand Jury Report and complaints filed by similarly situated victims of Barletta, Plaintiff learned for the first time that the Diocese of Erie and its bishops had a long history of protecting child predators at the expense of innocent and vulnerable children, and knew or should have known of Barletta's sexual attraction to young children and his inappropriate physical contact with them.

64. The Diocese knew from experience that priests who seek sexual gratification from children would inevitably continue to use their positions as priests and/or youth counselors to engage in illegal, immoral and harmful acts with children. Despite this, the Defendants habitually continued to transfer priests, including Barletta, to new locations and allowing more and more children to be sexually molested.

65. The Diocese had an accumulation of knowledge of their priests committing sexual abuse of children and kept said knowledge from the Plaintiff and the public, which has resulted in more and more children, including Plaintiff, being subject to sexual abuse.

66. Despite having knowledge of the sexual abuse of children by Barletta, as aforesaid, Diocese failed to inform any law enforcement officials of the sexual abuse allegations against Barletta.

67. Despite the Diocese's knowledge of Barletta's sexual abuse of children, he was never asked to leave the ministry. In fact, the Diocese reassigned him to other locations within the Diocese.

68. Barletta was continually transferred from position to position without any action taken by the Diocese to protect children.

69. Despite the knowledge and notice of Barletta's criminal actions, the Diocese repeatedly failed to take any action to investigate, discipline or report Barletta as a sexual predator. In fact, the Diocese took action, as noted above, to conceal Father Barletta's misconduct.

70. The Diocese, over the course of many years, concealed Father Barletta's sexual abuse and knowingly exposed populations of children to an unreasonable risk of injury and sexual molestation.

71. The Diocese's conduct, as aforesaid, was undertaken not to protect children, but rather, to protect its own reputation and the financial interests of the Diocese.

72. Barletta was a danger to children and the Diocese deliberately concealed this fact.

73. The Diocese had, in place, a deliberate scheme to conceal the danger that child predator clerics, including Barletta specifically presented to children by holding them out as reputable members of the church. Said Defendants did so as follows:

   a. Allowing such priests to reside and serve at churches and schools the Diocese controlled;

   b. Failing to notify parents of prior credible allegations of sexual misconduct by priests against children;

   c. Failing to notify parents of predator priests' prior sexual acts against children;

   d. Enabling such priests to have access to children;

   e. Permitting such priests to take children on unsupervised trips or outings when they knew that such priests would endanger the welfare of children;

   f. Allowing such priests use of Diocese properties, including schools, to

engage in such activities;

g.  Assigning such priests to duties at charitable functions, where they knew children would be under their direct care and supervision;

h.  Failing to warn parents when such priests were transferred to new assignments or making false statements about the true reasons for the transfers;

i.  Assuring those who had knowledge of the predator priests' history, that the Diocese had or would take sufficient actions to ensure they would not harm children when, in fact, they had no plan to do so in place; and,

j.  Failing to notify appropriate authorities regarding credible allegations (as well as admitted known instances), of criminal acts perpetrated by such priests against children.

74.  The conduct identified above created a false sense of security of the Plaintiff and his family that he was safe with priests in general and with Father Barletta in particular.

75.  By cloaking Barletta with the imprimatur of the church, and by their concealment, as stated above, the Diocese acted in concert to permit and enable Father Barletta to abuse the Plaintiff, as described above.

76.  Armed with the knowledge of Father Barletta's crimes, the Diocese chose not to act in the interests of children, but to instead conceal their knowledge by not reporting the misconduct to the authorities, and by encouraging others with knowledge not to report the misconduct to law enforcement.

77.  In doing so, the Diocese aided and abetted Father Barletta's crimes, by knowingly

failing to report credible allegations of sexual abuse.

78.  The Grand Jury Report concluded that the Diocese's actions were, in this respect, a "cover-up". (Grand Jury Report, page 1).

79.  The information described above was only made known to Plaintiff as a result of the release of the Grand Jury Report in August, 2018. The information could not have been obtained by Plaintiff earlier, despite the utmost due diligence, since this information was known only to the Diocese and contained in what was described as the "secret archives" of the Diocese. (Grand Jury Report, pages 299-300).

80.  As a direct result of the Diocese's conduct as described above, the Plaintiff sustained both physical and emotional injuries, which include, but are not limited to the following:

   a.  Immense on-going embarrassment and humiliation;

   b.  loss of self-esteem and shame;

   c.  Emotional distress;

   d.  Nightmares, loss of sleep, anxiety and other physical manifestations of the injuries caused by the events described above;

   e.  Aggravation and/or exacerbation of pre-existing mental anguish and trauma, upon learning from reading the Grand Jury Report of the Diocese Defendant's role in protecting its predator priests, including Father Barletta, as the expense of the Plaintiff's interests;

   f.  Severe mental anguish and trauma, causing Plaintiff to lash out and commit acts against churches, as retribution for the sexual abuse the Defendant allowed to occur;

g.   Anxiety, depression, nausea and loss of sleep as a result of reading the Grand Jury Report of the Defendant active involvement in protecting and encouraging by their inaction, priests known to them to be serial child abusers, including Father Barletta;

h.   A loss of enjoyment of life;

i.   Substance abuse;

j.   A loss of the ability to form relationships and inability to trust others; and

k.   A loss of earnings and earning capacity during those periods Plaintiff was unable to work due to trauma.

81.   As a result of the aforesaid injuries, Plaintiff has or may be required to seek psychological counseling in the future and incur the financial cost of such treatment.

82.   The acts and omissions of the Defendant were intentional, willful, wanton, outrageous, reckless and deliberately indifferent to the health, safety and welfare of children in general and the Plaintiff in particular.

83.   Said intentional, willful, wanton, outrageous, reckless and deliberately indifferent conduct of the Defendant, directly and proximately caused Plaintiff's injuries, and accordingly, Plaintiff asserts a claim for damages.

## COUNT I: NEGLIGENCE
## FAILURE TO SUPERVISE

84.   Plaintiff incorporates and realleges all paragraphs in this Complaint as if fully set forth herein.

85.     While Plaintiff was a student at Prep, it was the duty of the Diocese to exercise reasonable care in the supervision of its employees, agents, and servants, including Fr. Barletta.

86.     At all times relevant hereto, while Plaintiff was at Prep it was foreseeable that abuse of a minor could occur at Prep if adults were provided unmitigated ability to access to children without impunity.

87.     Notwithstanding said duty, the Diocese was guilty of the following negligent acts and/or omissions at all times relevant to this Complaint:

   a.     Failing to require and provide adequate training for recognizing child abuse to all employees of the Diocese, including but not limited to those working at Prep;

   b.     Failing to warn Plaintiff and/or his family of the risk that Fr. Barletta posed and the risk of child abuse by Diocese employees;

   c.     Employing Fr. Barletta in such a position where he had unmitigated ability to access to children without impunity, including the Plaintiff;

   d.     Failing to provide adequate supervision and control over Fr. Barletta so as to prevent Fr. Barletta from sexually abusing Plaintiff;

   e.     Allowing Fr. Barletta to be alone with Plaintiff when it knew or should have known that by doing so Fr. Barletta would sexually abuse Plaintiff;

   f.     Failing to stop Fr. Barletta from sexually abusing Plaintiff when it knew or should have known that Fr. Barletta was sexually abusing Plaintiff;

   g.     Failing to develop policies and procedures to prevent child sex abuse at Prep;

h.    Failing to implement sufficient policies and procedures place to prevent child sex abuse at Prep;

i.    Failing to evaluate whether its facilities were safe; and

j.    Were otherwise careless and negligent.

88.    As a direct and proximate result of the negligent acts and/or silence and omissions of the Diocese as aforesaid, Fr. Barletta was allowed to commit an act of sexual abuse on Plaintiff thereby causing injuries and damages to Plaintiff including severe permanent emotional and psychological distress, and loss of a normal life.

**WHEREFORE**, Plaintiff prays for judgment in his favor and against the Diocese of Erie for an amount in excess of $100,000.00 plus costs of suit and any further relief the Court deems equitable and just.

**COUNT II: NEGLIGENCE**
**BREACH OF FIDUCIARY DUTY**

89.    Plaintiff incorporates and realleges all paragraphs in this Complaint as if fully set forth herein

90.    Plaintiff had a special, confidential relationship with the Defendant requiring Defendant to disclose Fr. Barletta and other priests past acts.

91.    Plaintiff was a minor.  As a minor, Plaintiff was solely dependent on the Diocese for protection.

92.    Plaintiff and Plaintiff's guardians believed that Fr. Barletta, as agent of the Diocese, would act in good faith and in Plaintiff's best interest.

93.    Fr. Barletta gained the trust and confidence of Plaintiff through his status with Defendant and as a moral leader.

94.　Defendant did not disclose any and all known intentional acts of sexual abuse against minors to protect their reputation, in breach of their duty to disclose past sexual abuse that was known to the Diocese.

95.　Defendant's concealment of the tortious conduct of Fr. Barletta was in concert to further perpetuate and conceal sex abuse of minors in the Diocese where they knew of Fr. Barletta and their breach gave encouragement for the sex abuse to continue.

96.　As a direct and proximate result of the negligent acts and/or silence and omissions of the Diocese as aforesaid, Fr. Barletta was allowed to repeatedly commit acts of sexual abuse on Plaintiff thereby causing injuries and damages to Plaintiff including severe permanent emotional and psychological distress, and loss of a normal life.

**WHEREFORE**, Plaintiff prays for judgment in his favor and against the Diocese of Erie for an amount in excess of $100,000.00 plus costs of suit and any further relief the Court deems equitable and just.

## COUNT III: NEGLIGENCE
## FAILURE TO PROVIDE A SECURE ENVIRONMENT

97.　Plaintiff incorporates and realleges all paragraphs as if fully set forth herein.

98.　Defendant had a duty to Plaintiff as minor student, where their conduct was in reckless disregard of the safety of Plaintiff where they intentionally omitted and took action to address instances of minor child sex abuse in the Diocese after knowing and/or having reason to know of that concealment would lead a reasonable person to realize, not only that his conduct created an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent. *See* Section § 500 Restatement (Second) of Torts.

99. Defendant's conduct was such a substantial factor in the sex abuse suffered by Plaintiff and therefore the negligent conduct also rises to the level of reckless disregard of another's safety. *See* Restatement (Second) of Torts § 501.

100. The Diocese accepted minors at Prep, held Prep out as a safe place for children and held Fr. Barletta out as a fit staff member and community leader.

101. The Defendant was able to control Fr. Barletta from intentionally harming minor children, such has Plaintiff, but refused to exercise that control where Defendant had knowledge of rampant sex abuse of minors in the Diocese.

102. While Plaintiff was at Prep, Defendant undertook to sexually assault Plaintiff, so as to deprive those previously responsible for Plaintiff's protection of its normal opportunities for protection of Plaintiff, including without limitation, the deprivation of its normal opportunity to protect Plaintiff from the sexual abuse of a predator or pedophile.

103. By accepting custody of Plaintiff, Defendant had a special relationship with Plaintiff.

104. As detailed more specifically above, Defendant, by and through its agents, servants and employees, had superior knowledge about the risk that its staff members, including but not limited to Fr. Barletta, posed to Plaintiff, the risk of abuse in general in its programs, and the risks that its facilities posed to minor children and, as such, were in the best position to protect Plaintiff against the risk of harm presented by Fr. Barletta.

105. At all times relevant hereto, Defendant was aware of the high degree of risk and that the risk of sex assault was unreasonable under the circumstances.

106. At all times relevant hereto, Defendant had information of rampant sex abuse of minors that should have inferred to Defendant that increased risk to Plaintiff of sex abuse existed.

107. At all times relevant hereto, Defendant, if acting with reasonable prudence, would ascertain this increased risk of child sex abuse in performance of their duty to Plaintiff to assume that such a risk may occur.

108. At all times relevant hereto, while Plaintiff was at Prep, Defendant should have known that abuse of a minor could occur to students, some of which known pedophiles, were provided unmitigated ability to access to children without impunity.

109. As such, Defendant, by and through its agents, servants and employees knew, or should have known of the risk that Fr. Barletta would sexually abuse children, including Plaintiff.

110. This created an affirmative duty on the part of Defendant to protect Plaintiff from being sexually abused by Fr. Barletta.

111. Defendant's concealment of tortious conduct of Fr. Barletta, and rampant sex abuse incidents in the Diocese, a was in concert to further perpetuate and conceal sex abuse of minors in the Diocese where they knew of Fr. Barletta and their breach gave encouragement for the sex abuse to continue.

112. Notwithstanding said duty, the Diocese was guilty of the following negligent acts and/or omissions at all times relevant to this Complaint:

a.    Failing to require and provide adequate training for recognizing child abuse to all employees of the Diocese, including but not limited to those working at Prep;

b.    Failing to warn Plaintiff and/or his family of the risk that Fr. Barletta posed and the risk of child abuse by Diocese employees;

c.    Employing Fr. Barletta in such a position where he had unsupervised access to children, including the Plaintiff;

d.    Failing to provide adequate supervision and control over Fr. Barletta so as to prevent Fr. Barletta from sexually abusing Plaintiff;

e.    Allowing Fr. Barletta to be alone with Plaintiff when it knew or should have known that by doing so Fr. Barletta would sexually abuse Plaintiff;

f.    Failing to stop Fr. Barletta from sexually abusing Plaintiff when it knew or should have known that Fr. Barletta was sexually abusing Plaintiff;

g.    Failing to develop policies and procedures to prevent child sex abuse at Prep;

h.    Failing to implement sufficient policies and procedures place to prevent child sex abuse at Prep;

i.    Failing to evaluate whether its facilities were safe; and

j.    Were otherwise careless and negligent.

113.    As a direct and proximate result of the negligent acts and/or silence and omissions of the Diocese as aforesaid, Fr. Barletta was allowed to commit an act of sexual abuse on Plaintiff thereby causing injuries and damages to Plaintiff including severe permanent emotional and psychological distress, and loss of a normal life.

WHEREFORE, Plaintiff prays for judgment in his favor and against the Diocese of Erie for an amount in excess of $100,000.00 plus costs of suit and any further relief the Court deems equitable and just.

### COUNT IV: NEGLIGENCE
### FAILURE TO CONTROL CONDUCT OF THE SERVANT

114. Plaintiff incorporates and realleges all paragraphs in this Complaint as if fully set forth herein.

115. It was the duty of the Defendant, through the acts of its employees and agents, to exercise reasonable care for the protection and benefit of minor children, including Plaintiff.

116. In the alternative, the actions of Fr. Barletta described above were outside the scope of Fr. Barletta's employment with Defendant but were such acts for which Defendant has legal responsibility.

117. Defendant had a duty to exercise reasonable care to Plaintiff, as a minor student parishioner, so to control Fr. Barletta while acting outside the scope of his employment as to prevent him from intentionally harming others, including Plaintiff, and/or from conducting himself as to create an unreasonable risk of bodily harm to them, where Fr. Barletta was or about the premises in possession of the Diocese and/or Fr. Barletta was privileged to enter only as his servant of the Diocese, and the Diocese knew or had reason to know that they had the ability to control Fr. Barletta, and knew or should have known of the necessity and opportunity for exercising such control. *See* Section § 317 of the Restatement (Second) of Torts.

118. Fr. Barletta was on the premises of Prep at the direction and supervision of the Defendant, its agents, servants and employees and Defendant knew that it had the ability to control Fr. Barletta, and that he was likely to have access to minors to which he had and was given access by the Defendant.

119. At all times relevant hereto, while Plaintiff was at Prep it was foreseeable that abuse of a minor could occur if adults were provided unmitigated ability to access to children without impunity within the Diocese.

120. Defendant's concealment of the tortious conduct of Fr. Barletta was in concert to further perpetuate and conceal sex abuse of minors in the Diocese where they knew of Fr. Barletta and their breach gave encouragement for the sex abuse to continue; including but not limited to the fact that the Diocese, after learning their employees had sexually assaulted a minor, they would not report the incident to the police and conceal the crime.

121. Notwithstanding said duty, the Diocese was guilty of the following negligent acts and/or omissions at all times relevant to this Complaint:

    a.  Failing to require and provide adequate training for recognizing child abuse to all employees of the Diocese, including but not limited to those working at Prep;

    b.  Failing to warn Plaintiff and/or his family of the risk that Fr. Barletta posed and the risk of child abuse by Diocese employees;

    c.  Employing Fr. Barletta in such a position where he had unmitigated ability to access to children without impunity, including the Plaintiff;

d.      Failing to provide adequate supervision and control over Fr. Barletta so as to prevent Fr. Barletta from sexually abusing Plaintiff;

e.      Allowing Fr. Barletta to be alone with Plaintiff when it knew or should have known that by doing so Fr. Barletta would sexually abuse Plaintiff;

f.      Failing to stop Fr. Barletta from sexually abusing Plaintiff when it knew or should have known that Fr. Barletta was sexually abusing Plaintiff;

g.      Failing to develop policies and procedures to prevent child sex abuse at Prep;

h.      Failing to implement sufficient policies and procedures place to prevent child sex abuse at Prep;

i.      Failing to evaluate whether its facilities were safe; and

j.      Were otherwise careless and negligent.

122.    As a direct and proximate result of the negligent acts and/or silence and omissions of the Diocese as aforesaid, Fr. Barletta was allowed to commit an act of sexual abuse on Plaintiff thereby causing injuries and damages to Plaintiff including severe permanent emotional and psychological distress, and loss of a normal life.

**WHEREFORE**, Plaintiff prays for judgment in his favor and against the Diocese of Erie for an amount in excess of $100,000.00 plus costs of suit and any further relief the Court deems equitable and just.

### COUNT V– NEGLIGENCE
### **FAILURE TO WARN**

123.    Plaintiff incorporates and realleges all paragraphs in this Complaint as if fully set forth herein.

124.    Defendant provided spiritual services to Plaintiff, a minor.

24

125.   Fr. Barletta's conduct of touching a minor during confession and on a Prep-sanctioned class trip, which was in his capacity and within the scope of and in furtherance of the Diocese as he was performing mass for students.

126.   At all times pertinent to, Defendant knew about or should have known about the activities of Fr. Barletta after receiving complaints about the sexual misconduct of priests in the Diocese.

127.   At all times pertinent to, Defendant should have known about the sexual abuse of its agents after receiving reports in the Diocese of rampant sex abuse of minors but failed to warn Plaintiff or Plaintiff's guardians he, as a minor, she may be at risk of sexual assault.

128.   As a direct and proximate result of the negligent acts and/or silence and omissions of the Diocese as aforesaid, Fr. Barletta was allowed to commit an act of sexual abuse on Plaintiff thereby causing injuries and damages to Plaintiff including severe permanent emotional and psychological distress, and loss of a normal life.

**WHEREFORE**, Plaintiff prays for judgment in his favor and against the Diocese of Erie for an amount in excess of $100,000.00 plus costs of suit and any further relief the Court deems equitable and just.

## COUNT VI: **FRAUD**

129.   Plaintiff incorporates and realleges all paragraphs in this Complaint as if fully set forth herein.

130.   Defendant made misrepresentations that its agents were spiritual leaders of the Diocese, of moral character and competent to guide and counsel minors, such as Plaintiff through their omissions and concealment of such widespread conduct.

131. As set forth herein, Defendant had a special duty with Plaintiff, as she was a minor student parishioner at Prep under the care of the Diocese.

132. Through silence and concealment of rampant sex abuse of minors in the Diocese, Defendant intended that its reputation and reputation of its agents would be unaffected at the grave expense to the Plaintiff, who relied on Defendant to not remain silence and conceal past occurrences of the sex abuse of minors.

133. Plaintiff and Plaintiff's guardians reasonably relied on the representations made by the Diocese.

134. As a direct and proximate result of the negligent acts and/or silence and fraudulent omissions of the Diocese as aforesaid, Fr. Barletta was allowed to commit an act of sexual abuse on Plaintiff thereby causing injuries and damages to Plaintiff including severe permanent emotional and psychological distress, and loss of a normal life.

**WHEREFORE,** Plaintiff prays for judgment in his favor and against the Diocese of Erie for an amount in excess of $100,000.00 plus costs of suit and any further relief the Court deems equitable and just.

### COUNT VII: <u>FRAUDULENT CONCEALMENT</u>

135. Plaintiff incorporates and realleges all paragraphs in this Complaint as if fully set forth herein.

136. The Diocese Defendant used their special and superior position to assume control of the knowledge and information about the serious and extensive problem of child predators within the Diocese, information that was not available to the Plaintiff or the public until the release of the Grand Jury Report in August, 2018.

137. At the time of the abuse, the Plaintiff was in a subordinate position of weakness, inequality and without such knowledge. Moreover, he lacked the ability to obtain such information, as the Defendants kept such information from the public; Defendants remained silent despite the presence of a duty to speak.

138. Plaintiff's ability to monitor the use or misuse of power and authority of the Defendants in acting upon or responding to such knowledge was purposely compromised and restricted by Defendants.

139. Defendants had a special relationship with the Plaintiff, and their acts, omissions, and fraudulent misrepresentations, as stated above, represented an abuse of that relationship.

140. The Defendants engaged in a course of conduct to deceive and intentionally mislead, thereby preventing Plaintiff from learning the facts constituting the constructive fraud.

141. Defendants intended their fraudulent concealment to shield the Catholic Church and the Diocese from scrutiny to enhance their reputation and financial interests.

142. Plaintiff's claim did not accrue until she discovered that the Diocese Defendant had betrayed his trust by concealing their knowledge of the dangers of sexual abuse within the Diocese of Erie and the enormous number of sexual predator priests within the Diocese, as revealed by the Grand Jury Report.

**WHEREFORE,** Plaintiff prays for judgment in his favor and against the Diocese of Erie for an amount in excess of $100,000.00 plus costs of suit and any further relief the Court deems equitable and just.

### COUNT VIII: <u>CIVIL CONSPIRACY</u>

143.   Plaintiff incorporates and realleges all paragraphs in this Complaint as if fully set forth herein.

144.   Defendant conspired to conceal their knowledge and their history of the sexual abuse of minors and that concealment exposed Plaintiff to foreseeable harm.

145.   As detailed in the Grand Jury Report, the conspiracy to protect the reputation of the church and its priests, including Father Barletta, reflected a total indifference and reckless disregard to the duty owed to children of the Diocese in general, and the Plaintiff in particular.

146.   The Grand Jury Report stated that "evidence showed that Diocesan administrators, including the bishops, had knowledge of this conduct yet regularly placed the priests in ministry after the Diocese was on notice that a complaint of child sexual abuse had been made. This conduct was enabling to the offenders and endangered the welfare of children". (Grand Jury Report, page 209).

147.   The Grand Jury "received evidence that several Diocesan administrators, including bishops, often dissuaded victims from reporting to police or conduct their own deficient biased investigation without reporting crimes against children to the proper authorities". (Grand Jury Report, page 210).

148.   The Grand Jury called the Diocese's actions a "cover-up" and concluded that "priests were raping little boys and girls and the men of God who were responsible for them not only did nothing; they hid it all". (Grand Jury Report, page 7).

149.   But for the conspiracy among the Defendants to conceal pertinent information about Barletta and the general problem of sexual predator priests within the Diocese

and remaining silent when they had a duty to speak, the Plaintiff and his parents would never have allowed Father Barletta to have unsupervised access to Plaintiff.

150.   The conspiracy to protect Father Barletta and other priests known to have a sexual interest in children, and to conceal their knowledge, is a continuing conspiracy.

151.   This conspiracy of the concealment of the sex abuse of minors caused Plaintiff to incur damages where she experienced traumatic sex abuse as a minor and that concealment of the Diocese continued into his adulthood causing additional injury.

152.   As a direct and proximate result of the negligent acts and/or silence and omissions of the Diocese as aforesaid, Fr. Barletta was allowed to commit an act of sexual abuse on Plaintiff thereby causing injuries and damages to Plaintiff including severe permanent emotional and psychological distress, and loss of a normal life.

**WHEREFORE**, Plaintiff prays for judgment in his favor and against the Diocese of Erie for an amount in excess of $100,000.00 plus costs of suit and any further relief the Court deems equitable and just.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Respectfully submitted

Brian Ketterer, Esq.
PA Supreme Court I.D. No. 88898
Christina Graziano, Esq.
*(Pro Hac Vice forthcoming)*
Ketterer, Browne & Anderson, LLC
336 S. Main Street
Bel Air, MD 21014

Telephone: (410) 420-0184
Email: brian@kbaattorneys.com
        Christina@kbaattorneys.com

Attorneys for Plaintiff

**VERIFICATION**

The undersigned, having read the attached pleading, verifies that the within pleading is based on information furnished to counsel, which information has been gathered by counsel in the course of this lawsuit. Signer verifies that he has read the within pleading and that it is true and correct to the best of the signer's knowledge, information, and belief. This Verification is made subject to the penalties relating to unsworn falsification to authorities.

_____
Brian Ketterer, Esq.

I, Rick Suminski, declare under penalty of perjury that the foregoing is true and correct.

/s/ Rick Suminski
Jane Doe, Plaintiff

31

**Malone, Kelly**

| | |
|---|---|
| **From:** | Elise Doak <elise@kbaattorneys.com> |
| **Sent:** | Thursday, August 13, 2020 12:33 PM |
| **To:** | Malone, Kelly |
| **Cc:** | Christina Graziano |
| **Subject:** | New Civil Complaint- Diocese of Erie County |
| **Attachments:** | CofCPCivilCoverSheet.pdf; Rick Suminski Complaint 08.10.2020.pdf |

Good Afternoon

I really appreciate the help. Please see attached documents. If you need anything else let me know. Checks and originals will be going in the mail today also.

Thank you

--

*This month we are supporting the Upper Chesapeake Medical Center Volunteer Services Association.*

KB

**Elise Doak | Legal Assistant**
**Ketterer, Browne & Anderson, LLC**
Office: 410.885.6267 | Toll Free: 1-855-KBA-LAWS (855-522-5297)
Direct: 410-885-6174
Facsimile: 855.334.5626
Elise@KBAAttorneys.com | www.KBAAttorneys.com
336 S. Main Street, Suite 2A-C, Bel Air, MD 21014

COMMON PLEAS COURT
ERIE, PA
2020 AUG 13 PM 1:19
CLERK OF RECORDS
PROTHONOTARY